IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | Case No. 4:04CV3184 |
| Plaintiff, | |
| vs. | **MEMORANDUM AND ORDER** |
| COMMERCIAL HEDGE SERVICES, INC., d/b/a PRIME TRADING COMPANY, PRIME TRADING COMPANY, INC., LAWRENCE JOSEPH VOLF, PT HOLDINGS, INC., d/b/a PRIME TRADING, SHERMAN COUNTY MANAGEMENT, INC., and SHERMAN COUNTY BANK, | |
| Defendants. | |

Because the Commodity Futures Trading Commission (the Commission) is not barred from seeking restitution from the defendants even though some of the private victims may have entered into settlement agreements with the defendants and received money as a result, I deny the defendants' motions for summary judgment. Briefly, I explain the reasoning for my decision next.

## *I. BACKGROUND*

The Commission is a federal agency charged with administration and enforcement of the Commodity Exchange Act (Act), 7 U.S.C. §§ 1 et seq. In that capacity, the Commission brought suit against the defendants alleging that they

violated the Act. (Filing 25 (Amended Complaint).) Among other things, the Commission claims that the defendants are liable for unauthorized trading, fraud in connection with futures contracts, fraud in connection with commodity options contracts, and fraud by a commodity trading advisor. The Commission seeks various forms of relief, including "an order directing defendants to make <u>full</u> restitution, pursuant to such procedure as the Court may order, to every customer whose funds were received by them as a result of acts and practices which constituted violations of the Act and Regulations, . . . and interest thereon from the date of such violation[.]" (Amended Complaint, at 22 ¶ e.) (Emphasis added.)

The defendants have filed motions for summary judgment regarding the restitution claim. They assert that nearly all of the alleged victims have signed private settlement agreements, and have received money in exchange, to resolve any dispute regarding the violations which form the predicate for the Commission's suit. For example, the defendants assert that of the 90 customers allegedly harmed during a particular time frame, 84 have "signed a General Release releasing Prime Trading and its shareholders, officers, directors, employees, agents, affiliates and clearing firms ('Firm') from all claims which the customer ever had, then had or which they may thereafter have against the Firm up to the date of the General Release." (Filing 64 (Brief of Defendants Commercial Hedge Services, Inc., <u>et al.</u>) at 3 ¶ 4.) They also assert that $1,084,000 was paid in settlement. (<u>Id.</u>, at 4 ¶ 8.)[1]

The Commission does not dispute that settlements were reached and money paid, but the Commission presents various additional facts that call into question the validity of the releases. In particular, the Commission asserts that the victims "felt they needed to sign the general release because they had lost so much money in the

---

[1] The defendants do not claim, however, that the Commission consented to the settlements or in any way misled the defendants.

2002 program that they needed the [settlement] money in order to continue operating their farms . . . ." (Filing 80 (Plaintiff's Brief), at 5 ¶ 12.)[2]

## *II. ANALYSIS*

The Commission seek restitution pursuant to 7 U.S.C. § 13a-1. That statute provides in pertinent part as follows:

(a) Action to enjoin or restrain violations

Whenever it shall appear to the Commission that any registered entity or other person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of this chapter or any rule, regulation, or order thereunder, or is restraining trading in any commodity for future delivery, the Commission may bring an action in the proper district court of the United States or the proper United States court of any territory or other place subject to the jurisdiction of the United States, to enjoin such act or practice, or to enforce compliance with this chapter, or any rule, regulation or order thereunder, and said courts shall have jurisdiction to entertain such actions: Provided, That no restraining order (other than a restraining order which prohibits any person from destroying, altering or disposing of, or refusing to permit authorized representatives of the Commission to inspect, when and as requested, any books and records or other documents or which prohibits any person from withdrawing, transferring, removing, dissipating, or disposing of any funds, assets, or other property, and other than an order appointing a temporary receiver to administer such restraining order and to perform such other duties as the court may consider appropriate) or injunction for violation of the provisions of this chapter shall be issued ex parte by said court.

---

[2] Even though I deny the motions for summary judgment because as a matter of law the defendants could not prevail even if the releases are valid, the Commission has presented sufficient evidence to convince me that a material fact exists regarding whether the releases were obtained from the private victims under economic duress.

(b) Injunction or restraining order

Upon a proper showing, a permanent or temporary injunction or restraining order shall be granted without bond.

(c) Writs or other orders

Upon application of the Commission, the district courts of the United States and the United States courts of any territory or other place subject to the jurisdiction of the United States shall also have jurisdiction to issue writs of mandamus, or orders affording like relief, commanding any person to comply with the provisions of this chapter or any rule, regulation, or order of the Commission thereunder, including the requirement that such person take such action as is necessary to remove the danger of violation of this chapter or any such rule, regulation, or order: Provided, That no such writ of mandamus, or order affording like relief, shall be issued ex parte.

(d) Civil penalties

(1) In any action brought under this section, the Commission may seek and the court shall have jurisdiction to impose, on a proper showing, on any person found in the action to have committed any violation a civil penalty in the amount of not more than the higher of $100,000 or triple the monetary gain to the person for each violation.

(2) If a person on whom such a penalty is imposed fails to pay the penalty within the time prescribed in the court's order, the Commission may refer the matter to the Attorney General who shall recover the penalty by action in the appropriate United States district court.

. . .

7 U.S.C.A. § 13a-1 (West 1999 & Supp. 2005).

The defendants do not dispute that this statute authorizes the Commission to seek restitution. Even if they did, the law is settled that a court "has authority to order

restitution under the 'ancillary relief' provision in 7 U.S.C. § 13a-1." Commodity Futures Trading Comm'n v. Wilshire Investment Management Corp., 407 F. Supp 2d 1304, 1314 (S.D. Fla. 2005).

Even though the Commission was not a party to the settlement agreements, and even though the private victims are not parties to this suit, the defendants assert that the settlement agreements bar the Commission from seeking restitution for those victims who signed settlement agreements. They argue that the Commission is not entitled to restitution because "[r]estitution by the CFTC is meant to make the damaged persons whole and compensate them for a defendant's wrongful acts," and in this case most of the victims have already been made whole. (Brief of Defendants Commercial Hedge Services, Inc., et al., at 5.)

Because the defendants misunderstand the purpose of restitution when sought by a governmental regulatory and enforcement agency in the context of a pubic market, I respectfully disagree that the settlement agreements bar the Commission from seeking restitution for victims who have signed those agreements and received money as a result. The "well-established general principle" is that "the government is not bound by private litigation when the government's action seeks to enforce a federal statute that implicates both public and private interests." Herman v. South Carolina National Bank, 140 F. 3d 1413, 1425 (11th Cir. 1998) (despite a settlement agreement in which over $12 million dollars was paid, and despite the fact that another court approved the settlement agreement at a "fairness" hearing, the Secretary of Labor could pursue ERISA action and seek equitable relief including restitution), cert. denied, 525 U.S. 1140 (1999), and cert denied sub nom., Fickling v. Herman, 525 U.S. 1140 (1999). That general principle is applicable to this case.

In this context, just as in the ERISA litigation involved in Herman, the Commission seeks to protect a public interest that far exceeds the interests of individual citizens. That is, the Commission seeks to protect the integrity of a public

market. The continued integrity and hence vitality of that public market has huge implications for the national economy.

Therefore, even though a private litigant "understandably" may believe it wise "to compromise claims to gain prompt and definitive relief," such a settlement "does not further the broader national public interests represented by the [Commission] and reflected in Congress's delegation of [the Act's] enforcement powers to the [Commission.]" Id. at 1426. Indeed, and quite apart from whether the individual victims are satisfied with their private settlements, full and ample restitution, and other equitable remedies such as disgorgement of profits, serve distinct deterrence functions that are vital to the "national public interest." Id. Therefore, when private parties settle their disputes without the approval or consent of the Commission, those settlements cannot preclude the Commission from later seeking additional or more full restitution or any other remedy.

I should hasten to add two qualifications. First, as the Commission concedes, the money paid by the defendants in settlement must be offset from any restitution award I may later enter. (Plaintiff's Brief, at 13.) Second, it may be that the settlement agreements have evidentiary value. That is, they may help define the real loss even though the settlements do not as a matter of law bar recovery of restitution. See Wilshire Investment Management Corp., 407 F. Supp. 2d at 1315 & n. 3 (S.D. Fla. 2005) (awarding restitution, but considering private settlement agreement to cap recovery of restitution sought by the CFTC for a particular victim).[3]

Accordingly,

IT IS ORDERED that the defendants' motions for summary judgment (filings 63 and 69) are denied.

---

[3] That said, I express no opinion on the evidentiary value of any of the settlement agreements.

March 30, 2006.                         BY THE COURT:

                                        s/ *Richard G. Kopf*
                                        United States District Judge

-7-