FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

2007 DEC 17 PM 2: 28

OFFICE OF THE CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | 4:04CV3184 |
| Plaintiff, | |
| v. | Consent Order of Permanent Injunction and Other Equitable Relief |
| COMMERCIAL HEDGE SERVICES, INC., PRIME TRADING COMPANY, INC., LAWRENCE J. VOLF, SHERMAN COUNTY MANAGEMENT, INC, SHERMAN COUNTY BANK, AND PT HOLDINGS, INC., | |
| Defendants. | |

## CONSENT ORDER OF PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

### I.

### INTRODUCTION

On November 24, 2004, plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC") filed its first amended complaint ("Amended Complaint") against defendants Commercial Hedge Services, Inc. ("CHS"), Prime Trading Company, Inc. ("PTC"), Lawrence J. Volf ("Volf"), Sherman County Management, Inc. ("SCM"), Sherman County Bank ("SCB"), and PT Holdings, Inc. ("PTH") (collectively "defendants") seeking injunctive and other equitable relief for violations of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1 *et seq.* (2002), and Commission Regulations ("Regulations"), 17 C.F.R. §§ 1.1 *et seq.* (2004). Defendants filed their answers on January 24, 2005 denying each and every alleged violation.

00234053

## II.

## **CONSENTS AND AGREEMENTS**

To effect settlement of the matters alleged in the Amended Complaint in this action without a trial on the merits or further judicial proceedings, defendants:

1. Consent to entry of this Consent Order of Permanent Injunction and Other Equitable Relief ("Order");

2. By consenting to the entry of the Order, defendants neither admit nor deny any of the allegations of the Amended Complaint or any statements, findings or conclusions expressed in the Findings of Fact or Conclusions of Law contained in this Order, except as to jurisdiction and venue;

3. Defendants do not consent to the use of this Order, or the Findings of Fact or Conclusions of Law, for any other proceeding brought by, or involving, the CFTC other than: (1) a proceeding to enforce this Order, or (2) a proceeding pursuant to Section 8a of the Act, 7 U.S.C. § 12a(1) and Part 3 of the Regulations, 17 C.F.R. § 3, brought within three years from the date of this Order for the sole purpose of enforcing the prohibitions against CHS, PTC and Volf set forth in paragraph 43 of this Order. For the sole purpose of any such proceeding (1) to enforce this Order; or (2) pursuant to Section 8a of the Act and Part 3 of the Regulations, the allegations of the Amended Complaint, and the findings of fact and conclusions of law contained in this Order, shall be taken as true and correct and be given preclusive effect without further proof;

4. Affirm that they have read and agreed to this Order voluntarily, and that no threat or promise other than as set forth specifically herein, has been made by the Commission or any

member, officer, agent or representative thereof, or by any other person, to induce consent to this Order;

5. Acknowledge service upon them of the summons and Amended Complaint in this action;

6. Admit that this Court possesses personal and subject matter jurisdiction over them and this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1;

7. Admit that venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1;

8. Waive:

    a. All claims that they may possess pursuant to the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504 (2000) and 28 U.S.C. § 2412 (2000) relating to or arising from this action and any right under EAJA to seek costs, fees and other expenses relating to or arising from this action;

    b. Any claim of double jeopardy based on the institution of this proceeding or the entry in this proceeding of any order imposing injunctions, a civil monetary penalty or any other relief; and

    c. All rights of appeal from this Order;

9. Consent to the continued jurisdiction of this Court for the purpose of enforcing the terms and conditions of this Order even if now or in the future defendants reside outside the jurisdiction;

10. Agree that neither they nor their agents, employees or representatives acting under their control, shall take any action or make any public statements denying, directly or indirectly, any allegations in the Amended Complaint or findings in this Order, or creating or tending to

create the impression that the Amended Complaint and this Order are without factual basis; provided, however, that nothing in this provision shall affect defendants' (i) testimonial obligations or (ii) right to take legal positions in other proceedings to which the Commission is not a party. Defendants will undertake all steps necessary to assure that their agents, employees and representatives understand and comply with this agreement; and

11.     No provision of this Order shall in any way limit or impair the ability of any person to seek any legal or equitable remedy against any defendant in any other proceeding.

### III.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Being fully advised in the premises and finding that there is just cause for entry of this Order that fully disposes of all issues in this matter, THE COURT FINDS THAT:

A.    Findings of Fact

12.     Plaintiff, the Commission, is an independent federal agency that is charged with administering and enforcing the provisions of the Act, 7 U.S.C. §§ 1 *et seq.*, and the Regulations 17 C.F.R. §§ 1.1 *et seq.*

13.     From approximately 1998 through approximately 2004, Defendant CHS was a Nebraska corporation and from approximately 1998 through July 2007 was registered with the Commission as an introducing broker ("IB"). CHS was guaranteed by R. J. O'Brien & Associates Inc. ("R.J. O'Brien"), a futures commission merchant ("FCM") registered with the Commission. CHS offices were located at 1510 E. 4th Street, Suite 1, North Platte, Nebraska 69101.

14.     Defendant PTC is a Nebraska corporation and was operated as a branch office of CHS from approximately 1999 through July 2007. From approximately January 2000 through

00234053                                                  4

the present, SCM and Volf each own a 50 percent interest in PTC. PTC represents that it has not conducted commodity brokerage business since approximately June 2004. PTC had offices at 717 O Street, Loup City, Nebraska 68853.

15. Defendant Volf resides in Loup City, Nebraska 68853. Volf was listed as a principal and registered as an associated person ("AP") of CHS from 1988 through 2007 and listed as a branch manager of CHS from 1999 through 2007. Volf was also listed as a principal and registered as an AP of PTC from 1999 through July 2007, a subsidiary of SCM and an affiliate of SCB. At all times relevant to this Order, Volf was a vice president and loan officer of SCB and had held the vice president position since 1996 and the loan officer position since 1997.

16. Defendant PTH is a Nebraska corporation currently registered as an independent IB. PTH purchased the right to use the Prime Trading name and purchased certain tangible and intangible assets of PTC. PTH was incorporated on March 31, 2004 after all of the acts alleged in the Amended Complaint had occurred. PTH's office is currently located at 717 O Street, Loup City, Nebraska, the former office of PTC.

17. Defendant SCM is a single bank financial holding company located in Loup City, Nebraska. SCM currently owns 100 percent of SCB and owned 50 percent of PTC from approximately January 2000 through the present. During this time period, by virtue of its 50% ownership of PTC, SCM was a principal of PTC.

18. Defendant SCB is a state chartered bank with its principal place of business at 734 O Street, Loup City, Nebraska. SCB is insured by the Federal Deposit Insurance Corporation and is wholly owned by SCM. SCB services mainly agricultural customers that operate farms in and around Sherman County, Nebraska and some small businesses. The bulk of these agricultural customers raise corn, soybeans, and some livestock.

19. In approximately 1999, Volf and SCM entered into an agreement to form PTC. At that time, CHS, PTC, and Volf, began a marketing program for the benefit of some of the agricultural customers of SCB and some other farmers and ranchers.

20. According to CHS, PTC, and Volf, the program would assist SCB's customers and other farmers in the purchase and sale of futures and option contracts to market crops associated with their corn farming operations, including government subsidies. PTC's customers all opened accounts with E.D.& F. Man, a registered FCM, and then with R.J. O'Brien in order to execute the trades recommended by PTC.

21. Volf and other SCB loan officers provided contact information regarding PTC to the SCB customers whom they believed might be interested in the trading program and referred those customers to PTC.

22. From the inception of the trading program until approximately February 2003, the majority of PTC customers had not provided CHS or PTC with powers of attorney to trade their accounts. Although PTC conducted periodic group meetings, and some individual personal meetings and telephone conversations to discuss trades to be placed in the marketing program in the future, CHS, PTC, and Volf did not contact each customer in the marketing program to obtain their authorization for the precise commodity and the exact amount of the commodity to be purchased or sold within the proximate time that the trades were placed.

23. The account opening documents between PTC customers and E.D. & F Mann and R.J. O'Brien included hedge agreements which indicated that the trades to be placed in the trading program were to be bona fide hedge transactions as defined by Regulation 1.3(z).

24. CHS, PTC and Volf explained during the periodic meetings, some individual meetings and telephone conversations that the trades to be placed would be for the purpose of

hedging the risk of a fall in the price of the current year's corn crop, re-establishing ownership of the previous year's corn crop that had previously been sold and providing protection with regard to the risk of losing government subsidies. Volf explained that the trades were intended to establish a bona fide hedge as defined in Regulation 1.3(z), 17 C.F.R. § 1.3(z).

25. Based on the purposes identified in paragraph 24, CHS, PTC and Volf placed 24 positions in the program during the time period alleged in the Amended Complaint. Of these 24 positions, however, 14 were not bona fide hedge transactions pursuant to Regulation 1.3(z), 17 C.F.R. § 1.3(z) in that they did not decrease the farmer's risk of a fall in the price of their cash corn crop. These 14 positions caused PTC's 90 customers to incur approximately $2 million in losses in their trading accounts that they would not have otherwise incurred had the transactions not been placed. Before the Commission's Amended Complaint was filed in this case, defendants had voluntarily signed settlement agreements with 89 of the 90 farm customers and paid those customers back approximately $1.4 million.

26. When SCB's customers began to incur large margin calls in the program, Volf, encouraged the farmers to remain in the marketing program. Further, Volf, as well as other SCB loan officers, recommended and obtained loans for the farmers from SCB to cover the margin calls the farmers had incurred in the marketing program.

27. In or about June 2004, after the Commission filed its initial Complaint in this matter, PTC ceased doing business and sold the right to use its name and certain tangible and intangible assets to PTH, an entity operating out of the office space formerly used by PTC and run by the two former employees of PTC. PTH continues to offer the same marketing program to local farmers as formerly offered by PTC.

28. After the CFTC filed its initial complaint, 33 of the 90 former PTC customers signed written documents stating that they did not want the CFTC to pursue any claim against defendants on their behalf.

B. Conclusions of Law

29. This Court has subject matter jurisdiction over this action and the allegations in the Amended Complaint pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1.

30. This Court has personal jurisdiction over defendants pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1.

31. Venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, because during the time of the acts complained of, defendants resided in and transacted business in the District of Nebraska.

32. PTC, and Volf effected transactions in commodity interests for the accounts of customers without obtaining, within a proximate time before the transaction: (a) specific authorization from the customers, or persons designated by the customers to control the account, for (1) the precise commodity interest to be purchased or sold and (2) the exact amount of the commodity interest to be purchased or sold; or (b) authorization in writing to effect transactions in commodity interests for the accounts without specific authorization, in violation of Regulation 166.2, 17 C.F.R. § 166.2.

33. PTC and Volf, in or in connection with orders to make, or the making of, contracts of sale of commodities for future delivery, made or to be made, for or on behalf of another person placed speculative trades in designated hedge accounts in violation of Section 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. § 6b(a)(2)(i) and (iii).

34. PTC and Volf, in connection with offers to enter into, the entry into, the confirmation of the execution of and the maintenance of commodity options transactions violated Section 4c(b) of the Act, 7 U.S.C. § 6c(b) and Regulation 33.10 (a) and (c), 17 C.F.R § 33.10(a) and (c), by placing speculative trades in designated hedge accounts.

35. CHS, PTC, and Volf, for compensation or profit, engaged in the business of advising others, either directly or through publications, writings, or electronic media, as to the value of or the advisability of trading in contracts of sale of commodities for future delivery made or to be made on or subject to the rules of a contract market or derivatives transaction execution facility and commodity option contracts and, therefore, operated as a commodity trading advisor (CTA) pursuant to Section 1a(6) of the Act, 7 U.S.C. § 1a(6).

36. While operating as a CTA, CHS, PTC, and Volf, by use of the mails and other means or instrumentality of interstate commerce, directly or indirectly placed speculative trades in designated hedge accounts in violation of Section 4o(1) of the Act, 7 U.S.C. § 6o(1).

37. SCM was a principal and PTC and Volf were its agents. As a result, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), SCM is liable for the violations committed by PTC and Volf.

38. SCB was a principal and Volf was its agent. As a result, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), SCB is liable for the violations committed by Volf.

IV.

## ORDER OF PERMANENT INJUNCTION

Based upon and in connection with the foregoing conduct,

**IT IS HEREBY ORDERED THAT:**

39.     CHS, PTC, and Volf are permanently restrained, enjoined, and prohibited from directly or indirectly effecting a transaction in a commodity interest for the account of any customer without (a) specific authorization for (1) the precise commodity interest to be purchased or sold and (2) the exact amount of the commodity interest to be purchased or sold; or (b) written authorization for the transactions without specific authorization, in violation of Regulation 166.2, 17 C.F.R. § 166.2.

40.     CHS, PTC, and Volf are permanently restrained, enjoined, and prohibited from cheating or defrauding or attempting to cheat or defraud another person; and/or willfully deceiving or attempting to deceive another person, by any means whatsoever in or in connection with orders to make, or the making of, contracts of sale of commodities for future delivery, made, or to be made, for or on behalf of another person in violation of Section 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. § 6b(a)(2)(i) and (iii), including but not limited to engaging in speculative trading in designated hedge accounts.

41.     CHS, PTC, and Volf are permanently restrained, enjoined, and prohibited from cheating or defrauding or attempting to cheat or defraud other persons; and willfully deceiving or attempting to deceive other persons in or in connection with an offer to enter into, the entry into, or the confirmation of the execution of any commodity option transaction, in violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b) and Regulations 33.10 (a) and (c), 17 C.F.R. § 33.10

(a) and (c), including but not limited to engaging in speculative trading in designated hedge accounts.

42. CHS, PTC, and Volf are permanently restrained, enjoined, and prohibited from directly or indirectly using the mails and other means or instrumentality of interstate commerce to engage in transactions, practices, or courses of business that operate as a fraud or deceit upon clients or prospective clients in violation of Section 4o(1) of the Act, 7 U.S.C. § 6o(1), including but not limited to engaging in speculative trading in designated hedge accounts.

**IT IS FURTHER ORDERED THAT:**

43. CHS, PTC, and Volf are, for a period of three years from the date this Order is entered, restrained, enjoined and prohibited from directly or indirectly:

   a. engaging in, controlling or directing the trading for any commodity interests in any markets or on any entity regulated by the Commission for or on behalf of any other person or entity, whether by power of attorney or otherwise; and

   b. applying for registration or seeking exemption from registration with the Commission in any capacity or engaging in any activity requiring registration or exemption from registration, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9), and acting, directly or indirectly, as a principal, officer, director, supervisor, agent or employee of any person registered, required to be registered or exempted from registration, unless such exemption is pursuant to Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9). This includes, but is not limited to, soliciting, accepting or receiving any funds, revenue or other property from any person, giving commodity trading advice for compensation or soliciting prospective customers related to the purchase or sale of any

commodity futures, security futures, or options on commodity futures, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9).

44. CHS, PTC, and Volf are currently not registered with the Commission. CHS, PTC, and Volf, shall not reapply for registration with the Commission for a period of three years from the date this Order is entered.

**IT IS FURTHER ORDERED THAT:**

45. SCM, for a period of three years from the date this Order is entered, is restrained, enjoined and prohibited from directly or indirectly holding an equity interest in any entity that engages in any commodity related activity.

**IT IS FURTHER ORDERED THAT:**

46. SCB, for a period of three years from the date this Order is entered, is restrained, enjoined and prohibited from directly or indirectly employing any person or entity that is registered with the Commission and/or engages in any trading of commodity interests for others.

## V.

## ORDER FOR OTHER EQUITABLE RELIEF

**IT IS HEREBY ORDERED THAT:**

47. **PAYMENT OF RESTITUTION:** Defendants are jointly and severally liable to pay restitution in the amount of $325,000 for which judgment is due and owing within 20 days of entry of this Order.

48. Defendants shall make their restitution payment to the list of 57 individuals/entities and in the amounts identified in Exhibit A to this Order.

49 Defendants are prohibited from making restitution payments in excess of the amounts specified in Exhibit B to this Order to the 33 PTC customers referred to in paragraph

28 and named in Exhibit B. The restitution payments identified in Exhibit B are proportionally equivalent to the restitution payments made to the individuals/entities specified in paragraph 48 of this Order and named in Exhibit A.

50. Defendants shall simultaneously transmit copies of the checks, or other method of payment, used to pay the individuals/entities identified on Exhibit A to this Order to Gregory Mocek, Director Division of Enforcement, or his successor, and the Office of Cooperative Enforcement, Division of Enforcement, Commodity Futures Trading Commission, at the following address: Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581.

51. **PAYMENT OF CIVIL MONETARY PENALTY**: Defendants are jointly and severally liable to pay a civil monetary penalty of $100,000. Payment of the civil monetary penalty is due within 20 days of the entry of this Order. Defendants shall pay this civil monetary penalty by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, made payable to the Commodity Futures Trading Commission and sent to the Commodity Futures Trading Commission, Division of Enforcement, Attn: Marie Bateman – AMZ-300, DOT/FAA/MMAC, 6500 S. Macarthur Blvd., Oklahoma City, Oklahoma 73169. If payment by electronic funds transfer is chosen, defendants shall contact Marie Bateman at 405-954-6569 for instructions. Defendants shall accompany payment of the penalty with a cover letter that identifies defendants and the name and docket number of the proceedings. Defendants shall simultaneously transmit a copy of the cover letter and the form of payment to Gregory Mocek, or his successor, Director, Division of Enforcement, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581.

## VI.

## **OTHER PROVISIONS**

52.  Continuing Jurisdiction of This Court: This Court shall retain jurisdiction over defendants to assure compliance with this Order and for all other purposes related to this action.

53.  Waiver: The failure of any party to this Order at any time or times to require performance of any provision hereof shall in no manner affect the right of such party at a later time to enforce the same or any other provision of this Order. No waiver in one or more instances of the breach of any provision contained in this Order shall be deemed or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Order.

54.  Acknowledgments: Upon being served with a copy of this Order after entry by this Court, defendants shall sign an acknowledgment of service and serve such acknowledgment on this Court and the CFTC within seven calendar days.

55.  Invalidation: If any provision or the application of any provision of this Order is held invalid, the remainder of the Order and the application of the provision to any other person shall not be affected by the holding.

56.  Entire Agreement and Amendments: This Order incorporates all of the terms and conditions of the settlement among the parties hereto. Nothing shall serve to amend or modify this Order in any respect whatsoever, unless: (1) reduced to writing: (2) signed by all parties hereto, and (3) approved by further order of this Court.

57.  Notices: All notices required to be given by any provision in this Order shall be sent certified mail, return receipt requested, as follows: Notice to the Commission: Attention,

Director of Enforcement, Commodity Futures Trading Commission, Division of Enforcement,

1155 21st Street, N.W., Washington, DC 20581.

There being no just reason for delay, the Clerk of the Court is hereby directed to enter this Order.

Done and **ORDERED** in Chambers at Lincoln, Nebraska, this 17th day of December, 2007.

_____
HONORABLE RICHARD G. KOPF
UNITED STATES DISTRICT JUDGE

_____
Lawrence J. Volf

Date: 9-10-07

_____
Lawrence J. Volf for
defendants Commercial Hedge Services, Inc., and
Prime Trading Company, Inc.,

Date: 9-10-07

Larry Baker for
Defendant PT Holdings, Inc.

Date: 9-12-07

_____
Gerald Wortman for
defendants Sherman County Management, Inc.
and Sherman County Bank

Date: 9-13-2007

_____

00234053                          15

_____
Edward H. Tricker, Esquire
Attorney for defendants, Lawrence J. Volf,
Commercial Hedge Services, Inc., Prime
Trading Company, Inc., and PT Holdings, Inc.
Woods & Aitken
301 South 13th Street
Suite 500
Lincoln, Nebraska 68508
(402) 437-8510 (telephone)
(402) 437-8558 (facsimile)

Date: 9/20-07

_____
Thomas E. Johnson, Esquire
Attorney for defendants, Sherman
County Management, Inc. and Sherman
County Bank
Baird Holm, LLP
1500 Woodman Tower
Omaha, Nebraska 68102
(402) 344-0500 (telephone)
(402) 231-8554 (facsimile)

Date: 9/20/07

_____
Richard Glaser, Esquire
Attorney for Plaintiff
U. S. Commodity Futures Trading Commission
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C. 20581
(202) 418-5358 (telephone)
(202) 418-5538 (facsimile)

Date: 12/11/07

00234053                             16

# EXHIBIT A

| | Name | Account # | Payment Due |
|---|---|---|---|
| 1 | Deriso, John | 35213 | $5,522.04 |
| 2 | Rogers, Eric | 35287 | $3,681.36 |
| 3 | Kuszak, David J. | 35297 | $12,424.58 |
| 4 | Wells, Jay | 35607 | $330.46 |
| 5 | Wardyn, Leonard | 35609 | $4,601.70 |
| 6 | Augustyn, Andy | 35612 | $4,601.70 |
| 7 | MAD Enterprises | 35665 | $18,406.79 |
| 8 | Felton, Tom | 35672 | $5,522.04 |
| 9 | Felton, John | 35673 | $9,203.39 |
| 10 | Lansman, Roger | 35686 | $6,902.54 |
| 11 | Kulwicki, Ron | 35687 | $5,522.04 |
| 12 | Wells, Errol | 35691 | $6,839.25 |
| 13 | Cunningham, Chris | 35692 | $5,522.04 |
| 14 | Cunningham, Larry | 35693 | $4,601.70 |
| 15 | Rasmussen Bros. | 35694 | $10,220.29 |
| 16 | Foth, Steve | 35699 | $1,840.68 |
| 17 | Ruth, Russell | 75700 | $460.17 |
| 18 | Lammers, Bros | 75701 | $2,297.14 |
| 19 | Cone, Ross | 75703 | $2,761.02 |
| 20 | Rasmussen, Ryan | 75707 | $319.29 |
| 21 | Ritz, Sterling | 75708 | $2,761.02 |
| 22 | Wadas, Randy | 75709 | $5,522.04 |
| 23 | Walrath, Scott | 75712 | $2,472.33 |
| 24 | Sherman Acres | 75713 | $1,840.68 |
| 25 | Dorsey Farms Inc | 75714 | $7,190.53 |
| 26 | Ritz, Bryce | 75716 | $1,840.68 |
| 27 | Kruml, Edward | 75720 | $3,681.36 |
| 28 | Novak, Keith | 75722 | $11,504.24 |
| 29 | Krzycki, Kenneth | 75724 | $920.34 |
| 30 | Edwards, Inc. | 75725 | $4,601.70 |
| 31 | Peters, Michael | 75727 | $8,283.05 |
| 32 | TK Farms Inc | 75729 | $11,504.24 |
| 33 | Kuszak, Justin | 75730 | $7,822.88 |
| 34 | JNR Farms, Inc | 75731 | $29,677.57 |
| 35 | Herbig, John | 75733 | $3,221.19 |
| 36 | Kuhn, Robert | 75738 | $7,362.71 |
| 37 | Wells, Lois | 75739 | $4,089.40 |
| 38 | Scott, Duane | 75740 | $6,442.38 |
| 39 | Knuth, Richard | 75747 | $14,725.43 |
| 40 | Davis Bros, Inc | 75750 | $4,141.53 |
| 41 | Kuhlman, Tony | 75751 | $5,522.04 |
| 42 | Kuhlman, Larry | 75752 | $5,522.04 |
| 43 | D&E Partnership | 75753 | $3,681.36 |
| 44 | Townsend, Alan | 75754 | $9,203.39 |
| 45 | Box Elder Ranch | 75755 | $9,203.39 |
| 46 | Schilling, Ron | 75756 | $1,380.51 |
| 47 | Lindsten, Rod | 75757 | $1,561.96 |
| 48 | Briney, Scott | 75758 | $13,805.09 |
| 49 | Wiley, Robin | 75759 | $920.34 |
| 50 | Keller, Albert | 75760 | $1,840.68 |
| 51 | Stamel, Bert | 75761 | $954.83 |
| 52 | Wil Lou, Inc. | 75762 | $7,362.71 |
| 53 | White, Charles B | 75763 | $4,141.53 |
| 54 | Southwind Farm | 75764 | $4,141.53 |
| 55 | Steven & Graves | 75765 | $1,380.51 |
| 56 | Bracelin Bros | 75766 | $920.34 |
| 57 | Denny Nickelson F | 75767 | $2,272.30 |
| | Total | | $325,000.00 |

# EXHIBIT B

| | Name | Account # | Payment Allowed |
|---|---|---|---|
| 1 | WO Zangger | 35223 | $3,221.19 |
| 2 | Pinneo, Lynn | 35235 | $11,504.24 |
| 3 | Snow, Sid | 35266 | $2,300.85 |
| 4 | Snow, Rod | 35272 | $2,300.85 |
| 5 | Stanczyk, Bryan | 35280 | $2,300.85 |
| 6 | Stanczyk, James | 35282 | $11,044.07 |
| 7 | Bader, Steven | 35605 | $4,601.70 |
| 8 | Double O Farms | 35615 | $3,681.36 |
| 9 | Gydesen, Dennis | 35618 | $3,221.19 |
| 10 | Ruth, Ronald | 35642 | $2,300.85 |
| 11 | Ruth, Randy | 35643 | $1,840.68 |
| 12 | Loeffelbein, Ken | 35666 | $15,185.60 |
| 13 | Jacobs, Duane | 35670 | $7,362.71 |
| 14 | Rademacher, Larry | 35676 | $4,141.53 |
| 15 | Lewandowski, Don | 35679 | $5,061.87 |
| 16 | Obermiller, Tom | 35680 | $460.17 |
| 17 | Harrington, Dick | 35681 | $1,840.68 |
| 18 | Smedra, Tom | 35682 | $4,141.53 |
| 19 | Kusek, Paul | 35684 | $1,380.51 |
| 20 | Klinginsmith, Scott | 35689 | $7,822.88 |
| 21 | Jarzynka, Jerry | 35698 | $1,380.51 |
| 22 | Morrow, Don | 35776 | $3,681.36 |
| 23 | Obermiller, John | 35785 | $14,725.43 |
| 24 | Robertson, James | 35788 | $2,300.85 |
| 25 | Thede, Mike | 75706 | $30,831.37 |
| 26 | Stepanek, Edward | 75710 | $5,522.04 |
| 27 | Bruha, Jerome | 75717 | $2,300.85 |
| 28 | Eurek, Frank | 75718 | $2,300.85 |
| 29 | Kusek, Rick | 75719 | $3,681.36 |
| 30 | Vogt, Joyce | 75721 | $3,681.36 |
| 31 | Jones, Brian | 75723 | $10,123.73 |
| 32 | Duester, Tim | 75735 | $2,300.85 |
| 33 | Obermiller, Tim | 75745 | $1,840.68 |
| | **Totals** | | $180,386.50 |